# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARC WATERMAN,                                    :
                                       :   Case No. _____

       Plaintiff,                                    :

                                         :   <u>JURY TRIAL DEMANDED</u>

       v.                                                 :

                                         :   **COMPLAINT FOR VIOLATION OF THE**

NIELSEN HOLDINGS PLC, JAMES A.          :   **<u>SECURITIES EXCHANGE ACT OF 1934</u>**
ATTWOOD JR., DAVID KENNY,                    :
GUERRINO DE LUCA, KAREN M.              :
HOGUET, JANICE MARINELLI MAZZA,       :
JONATHAN MILLER, DAVID                       :
RAWLINSON, NANCY TELLEM,                   :
LAUREN ZALAZNICK, THOMAS H.           :
CASTRO, HARISH MANWANI, ROBERT        :
C. POZEN, and JAVIER G. TERUEL,             :
                                         :

       Defendants.                                  :

Plaintiff Marc Waterman ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants (defined below), alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1.     On October 31, 2020, Nielsen Holdings plc ("Nielsen" or the "Company") entered into a stock purchase agreement (the "SPA") with affiliates of Advent International Corporation ("Advent").

2.     Under the terms of the SPA, Advent will acquire Nielsen's Global Connect business through the sale of equity interests of subsidiaries held by Nielsen that operate the Global Connect business for $2.7 billion (the "Transaction").

3.     On December 23, 2020, Defendants filed a proxy statement (the "Proxy Statement") with the U.S. Securities and Exchange Commission ("SEC").

4.      As alleged below, the Proxy Statement omits material information regarding the Transaction, and Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is and has been continuously throughout all relevant times the owner of Nielsen common stock.

9.      Defendant Nielsen is a public limited company formed under the laws of England and Wales.  Nielsen's common stock is traded on the NYSE under the ticker symbol "NLSN."

10.     Defendant James A. Attwood Jr. is Chairman of the Board of Directors (the "Board") of the Company.

11.     Defendant David Kenny is Chief Executive Officer and a member of the Board.

12.     Defendant Guerrino De Luca is a member of the Board.

13.     Defendant Karen M. Hoguet is a member of the Board.

14.     Defendant Janice Marinelli Mazza is a member of the Board.

15.     Defendant Jonathan Miller is a member of the Board.

16.     Defendant David Rawlinson is a member of the Board.

17.     Defendant Nancy Tellem is a member of the Board.

18.     Defendant Lauren Zalaznick is a member of the Board.

19.     Defendant Thomas H. Castro is a member of the Board.

20.     Defendant Harish Manwani is a member of the Board.

21.     Defendant Robert C. Pozen is a member of the Board.

22.     Defendant Javier G. Tereul is a member of the Board.

23.     Defendants in ¶¶ 10-22 are referred to as the "Individual Defendants."

24.     Defendants in ¶¶ 9-22 are referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

25.     Nielsen is a global measurement and data analytics company that provides the most complete and trusted view available of consumers and markets worldwide.

26.     The Company is divided into two business units.  Nielsen Global Media provides media and advertising industries with unbiased and reliable metrics that create a shared understanding of the industry required for markets to function.  Nielsen Global Connect provides consumer packaged goods manufacturers and retailers with accurate, actionable information and insights and a complete picture of the complex and changing marketplace that companies need to innovate and grow.

27.     On October 31, 2020, Nielsen entered into the SPA, under which Advent will acquire Nielsen's Global Connect Business.

28.     The press release announcing the Transaction stated as follows:

Nielsen Holdings plc ("Nielsen") (NYSE: NLSN) announced today that it has signed a definitive agreement under which affiliates of Advent International ("Advent"), one of the largest and most experienced global private equity investors, in partnership with James "Jim" Peck, former Chief Executive Officer of TransUnion, will acquire the Nielsen Global Connect business for $2.7 billion (subject to working capital, cash, debt-like items and other customary adjustments). Nielsen will also receive warrants in the new company exercisable in certain circumstances. Upon completion of the transaction, Nielsen Global Connect will be a private company with the flexibility to continue investing in the development and deployment of leading-edge measurement products and solutions. The transaction was unanimously approved by Nielsen's Board of Directors.

"This is a win for both Nielsen Global Connect and for Nielsen (RemainCo), as well as for our shareholders," said David Kenny, Chief Executive Officer, Nielsen. "The sale of this business to Advent will deliver substantial value sooner than was anticipated through the planned spin-off and creates certainty for all stakeholders. The proceeds from the sale will allow Nielsen to significantly reduce debt, which will provide greater financial flexibility to execute our growth strategy and expand our role in the global media marketplace. At the same time, we are excited about this opportunity for Nielsen Global Connect and believe that moving forward as a private company will better position the business to accelerate its transformation and strengthen its market-leading position. With the support of Advent's resources and expertise, we believe the new company will create and define the next century of consumer and market measurement. We thank the entire Nielsen Global Connect team for their invaluable partnership and look forward to continuing a strong working relationship with them in the future."

Kenny added, "All of the terrific work done by so many to pursue a spin-off will position both businesses to thrive as standalone companies and will allow us to execute a smooth transaction. We are grateful for all of this dedicated work."

"Nielsen Global Connect is the gold standard in retail measurement, with exceptional insights and unrivaled scale and coverage of the global CPG and retail markets," said Peck. "As customers face a rapidly evolving marketplace, we recognize that they have high expectations for Nielsen Global Connect to help them meet these new demands and to build on its existing core platform and other retail measurement capabilities. We intend to work with David Rawlinson and the talented management team to accelerate the delivery of new capabilities and to continue the transformation underway to build an innovative, high-performing culture acutely focused on delivering value to customers around the world."

"Advent is thrilled to partner with Jim in driving this next phase of growth for Nielsen Global Connect," said Chris Egan, Managing Partner at Advent. "Advent has invested in data and information services companies for nearly three decades, and earlier this year we teamed up with Jim to identify a compelling business in the sector where we can apply our combined experience and resources to create value.

We see tremendous potential to build on Global Connect's cutting-edge platform, drawing on our global footprint and operational strength to further scale the business and advance its leadership across established and emerging markets."

David Rawlinson will remain CEO of Nielsen Global Connect through the close of the transaction and is expected to be part of the leadership team for the go-forward company. Upon close, Peck will be involved in the day-to-day strategic and operational activities of the company, which will be headquartered in Chicago, IL. In early 2021, the Global Connect business will be renamed NielsenIQ.

Nielsen will grant Nielsen Global Connect a license to brand its products and services with the "Nielsen" name and other Nielsen trademarks for 20 years following closing. Additionally, Nielsen and Advent will enter into agreements pursuant to which, among other things, Nielsen and Advent will provide certain transitional services to each other for periods of up to 24 months following closing, grant each other reciprocal licenses for certain data and corresponding services relating to that data for periods of up to five years following closing and grant each other licenses to use certain patents.

BACKGROUND ON NIELSEN GLOBAL CONNECT AND TRANSACTION DETAILS

Nielsen Global Connect provides consumer packaged goods manufacturers and retailers with actionable information and a complete picture of the complex and changing marketplace that brands need to innovate and grow their business. The company offers data and builds tools that use predictive models to turn market observations into business decisions and winning solutions. These data and insights provide the essential foundation that makes markets possible in the rapidly evolving world of commerce.

Nielsen plans to use net proceeds of the transaction primarily to reduce debt and for general corporate purposes. On a pro-forma basis for the transaction, Nielsen expects year-end 2020 net leverage to be approximately 4X. The transaction is subject to approval by Nielsen shareholders, regulatory approvals, consultation with the works council and other customary closing conditions; it is expected to close in the second quarter of 2021.

ADVISORS

J.P. Morgan Securities LLC and Guggenheim Securities, LLC are acting as financial advisors to Nielsen, and Wachtell, Lipton, Rosen & Katz, Clifford Chance LLP, DLA Piper, and Baker McKenzie are serving as legal advisors to Nielsen. Ropes & Gray LLP and Weil, Gotshal & Manges LLP are serving as legal counsel to Advent and BofA Securities is serving as lead financial advisor, with Deutsche Bank Securities Inc., RBC Capital Markets and UBS Investment Bank also advising. Financing for the transaction is being arranged and provided by Bank of America, UBS Investment Bank, Barclays, Deutsche Bank AG New York, HSBC, RBC Capital Markets, MUFG and Wells Fargo.

29.     On December 23, 2020, Defendants filed the Proxy Statement, which fails to disclose material information regarding the Transaction.

<u>Financial Projections</u>

30.     The Proxy Statement fails to disclose material information regarding Nielsen's financial projections.

31.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32.     The Proxy Statement fails to disclose:

(i)     The line items used to calculate Adjusted Standalone EBITDA and Free Cash Flow; and

(ii)     A reconciliation of the non-GAAP to GAAP metrics.

<u>Financial Analyses</u>

33.     The Proxy Statement fails to disclose material information regarding the financial analyses performed by, J.P. Morgan Securities LLC ("JP Morgan"), Nielsen's financial advisor.

34.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35.     The Proxy Statement fails to disclose JP Morgan's basis for selecting a multiple reference range for FV/CY 2021E EBITDA of 5.5x-6.0x in its Trading Multiples Analysis.

36.     The Proxy Statement fails to disclose the following regarding JP Morgan's Discounted Cash Flow Analysis:

      (i)     The unlevered free cash flows used in the analysis and the line items used to calculate unlevered free cash flow;

      (ii)    The terminal values;

      (iii)   The basis for applying terminal growth rates ranging from 0.0% to 1.0%; and

      (iv)   The inputs and assumptions underlying the discount rates of 8.75% to 9.75%.

37.    The Proxy Statement fails to disclose JP Morgan's basis for selecting a multiple reference range for FV/LTM EBITDA of 6.5x-9.0x in its Transactions Multiples Analysis.

38.    The Proxy Statement fails to disclose JP Morgan's basis for selecting a multiple reference range for FV/CY 2021E EBITDA-Capex of 6.0x-7.0x in its Alternative Trading Multiples Analysis.

39.    The Proxy Statement fails to disclose the following regarding JP Morgan's Equity Research Analyst Valuations analysis:

      (i)     The research analyst valuations used in the analysis; and

      (ii)    The sources of the research analyst valuations.

<u>Non-Disclosure Agreements</u>

40.    The Proxy Statement omits whether the Company entered into any non-disclosure agreements that contained standstill or don't ask, don't waive provisions.

41.    Without this information, stockholders may have the mistaken belief that, if potentially interested parties wished to come forward with superior offers, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

<u>Potential Conflicts of Interest of JP Morgan</u>

42.     The Proxy Statement fails to disclose material information regarding potential conflicts of interest of JP Morgan.

43.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44.     The Proxy Statement omits the amount of compensation JP Morgan and its affiliates have received or will receive for the "commercial banking affiliate" serving as "an agent bank and a lender under outstanding credit facilities of affiliated entities of Advent."

45.     If disclosed, the omitted information would significantly alter the total mix of information available to Nielsen's stockholders.

**COUNT I**

**Claim Against the Individual Defendants and Nielsen for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

46.     Plaintiff repeats and realleges the aforementioned allegations as if fully set forth herein.

47.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

48.     Nielsen is liable as the issuer of these statements.

49.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.

50.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Transaction.

53.     A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

54.     The Proxy Statement is an essential link in causing Plaintiff to approve the Transaction.

55.     Accordingly, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

56.     Due to the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

57.     Plaintiff repeats and realleges the aforementioned allegations as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Nielsen within the meaning of Section 20(a) of the Exchange Act.

59.     By virtue of their positions as officers and/or Board members of Nielsen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the

false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the statements that Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, thus, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

62.     The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction.  They were thus directly involved in the making of the Proxy Statement.

63.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.

65.     As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief against Defendants as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from consummating the Transaction;

B.    In the event Defendants consummate the Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  January 22, 2021                     **GRABAR LAW OFFICE**

                                   By: _____
                                        Joshua H. Grabar (#82525)
                                        One Liberty Place
                                        1650 Market Street, Suite 3600
                                        Philadelphia, PA 19103
                                        (267) 507-7112
                                        jgrabar@grabarlaw.com

                                        *Counsel for Plaintiff*

11